Timothy Snowball, Cal Bar No. 317379
tsnowball@freedomfoundation.com
Elena Ives, Cal Bar No. 331159
eives@freedomfoundation.com
Freedom Foundation
PO Box 552
Olympia, WA 98507
Telephone: (360) 956-3482
Facsimile: (360) 352-1874

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **GLENN LAIRD**, individual,<br><br>Plaintiff,<br><br>v.<br><br>**UNITED TEACHERS LOS ANGELES**, a labor organization; **LOS ANGELES UNIFIED SCHOOL DISTRICT,** a political subdivision of the State of California; and **XAVIER BECERRA** in his official capacity as Attorney General of California,<br><br>Defendants. | Case No.:<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT, INJUNCTIVE RELIEF, AND DAMAGES FOR VIOLATION OF CIVIL RIGHTS.**<br>[42 U.S.C. § 1983] |

COMPLAINT
No.

1

FREEDOM
FOUNDATION
P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

**INTRODUCTION**

Glenn Laird has witnessed students strangled, stabbed, and even shot to death in his thirty-eight years as a public-school teacher. In many cases, the ready presence of campus police officers was the difference between life and death. When his local union, United Teachers of Los Angeles (UTLA), joined a public campaign to "defund the police" and remove officers from campus, Mr. Laird vehemently disagreed. Mr. Laird resigned his membership and sought to end the dues payments UTLA used for political speech Mr. Laird morally opposes.

Mr. Laird had intentionally crossed out a narrow "opt-out window" provision prior to signing and returning his membership application. Instead of releasing him, UTLA continued to insist that the Los Angeles Unified School District (the District) divert Mr. Laird's lawfully earned wages to UTLA pursuant to state law and their collective bargaining agreement (CBA). UTLA told Mr. Laird that pursuant to the terms of his membership application, he was unable to immediately resign his membership, ignoring the deleted agreement to the window. The District and UTLA, empowered and authorized by state statutes and the CBA, continued to confiscate Mr. Laird's money without his affirmative consent until the inapplicable opt-out window period was reached.

This continued state action violated Mr. Laird's First Amendment right not to have his wages forcibly taken and used for political speech with which he vehemently disagrees, absent voluntary, intelligent, and knowing consent to waive that right. *Janus v. AFSCME, Council 31*, 138 S. Ct. 2448, 2486 (2018).

COMPLAINT
NO.

2

FREEDOM
FOUNDATION
P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

1    Additionally, the continued deductions violated Mr. Laird's right to procedural and

2    substantive due process. For these reasons, Mr. Laird brings this lawsuit under 42

3    U.S.C. § 1983 to recover his unconstitutionally seized wages, and to vindicate his

4    First Amendment rights as recognized by the United States Supreme Court.

5                              **JURISDICTION AND VENUE**

6         1.    This action arises under the First and Fourteenth Amendments to the

7    United States Constitution, 42 U.S.C. § 1983 (action for deprivation of federal civil

8    rights), and 28 U.S.C. §§ 2201-2202 (action for declaratory relief).

9         2.    The Court has subject-matter jurisdiction under 28 U.S.C. § 1331

10   (federal question jurisdiction), and 28 U.S.C. § 1343 (jurisdiction for deprivation of

11   federal civil rights).

12        3.    Venue is proper in Court because a substantial portion of the events

13   giving rise to the claims occurred in Los Angeles County within the Central District

14   of California. 28 U.S.C. § 1391(b)(2).

15                                    **PARTIES**

16        4.    Plaintiff Glenn Laird is a high school teacher and, prior to May 2020,

17   was a dues paying UTLA member for thirty-eight years. Mr. Laird resides in

18   Glendale, California. Mr. Laird seeks relief pursuant to the Civil Rights Act, 42.

19   U.S.C., § 1983, for declaratory and injunctive relief, compensatory and nominal

20   damages, and any other remedy this Court deems proper.

21        5.    Defendant United Teachers Los Angeles is the exclusive bargaining

22   representative for Mr. Laird's bargaining unit. Under California state law, Cal. Educ.

23

24   COMPLAINT
     NO.                                      3

Code § 45060, and the terms of the applicable collective bargaining agreement,[1] UTLA is empowered to represent whether employees have affirmatively consented to have union dues withdrawn from their pay. The Union office is located at 3303 Wilshire Blvd., 10th Floor, Los Angeles, CA 90010.

6.      Defendant Los Angeles Unified School District is a political subdivision in the State of California. Under California state law, Cal. Educ. Code § 45060, and the terms of the applicable collective bargaining agreement, the District is responsible for deducting dues from public employee's wages and remitting the dues to UTLA. The District's office is located at 333 S Beaudry Ave., Los Angeles, CA 90017.

7.      Defendant Xavier Becerra, California's Attorney General, is sued in his official capacity as the representative of the State of California charged with the enforcement of state laws, including the provisions challenged in this case. His address for service of process is 300 South Spring Street, Los Angeles, California, 90013 in Los Angeles County.

## FACTUAL ALLEGATIONS

**A. Glenn Laird: Dedicated teacher and former UTLA representative.**

8.      Mr. Laird has been a California teacher since January 1983, for over 38 years.

9.      Mr. Laird began teaching at Eagle Rock High School in 1994, after

---

[1] 2019 – 2022 Agreement, Los Angeles Unified School District and United Teachers Los Angeles, (last visited Mar. 11, 2021), https://www.utla.net/sites/default/files/2019-2022_utla-lausd_collective_bargaining_agreement.pdf

FREEDOM
FOUNDATION
P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

beginning his career at Richard E. Byrd Junior High School and Fairfax High School.

10.    For the past 27 years, Mr. Laird has operated Eagle Rock High School's Graphics Lab, which focuses on teaching students graphic design, visual advertising, and digital marketing.

11.    For decades Mr. Laird trained and took teams of students to "Skills USA Competitions," which focus on developing students for future careers in skilled technical professions.[2]

12.    Over the course of his career, Mr. Laird has taught approximately sixteen to seventeen thousand students.

13.    Mr. Laird became a dues-paying member of UTLA when he first began teaching in 1983.

14.    For twelve years during this period, Mr. Laird served as UTLA's assigned co-representative at Eagle Rock High School.

15.    In this role, Mr. Laird helped members understand and enforce their contractual rights under applicable collective bargaining agreements.

16.    Until two years ago, Mr. Laird supported UTLA's efforts to ensure teachers in the District received fair pay increases.

17.    He participated in rallies, meetings, and even picket lines on and off campus.

---

[2] *About*, SkillsUSA, https://www.skillsusa.org/ (last visited Mar. 11, 2021).

COMPLAINT
NO.

FREEDOM
FOUNDATION
P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

**B. Glenn Laird experienced on-campus violence.**

18.    Mr. Laird personally experienced multiple incidents of violence on campus in which law enforcement officers' presence benefited the health and safety of his students.

19.    In one of his first teaching positions, two of Mr. Laird's students got into a fistfight in his classroom.

20.    Eventually, one of the students pulled a boxcutter from the pocket of his pants and slashed the other student across his face and eyes, causing severe bleeding.

21.    Within a minute of the altercation beginning, a campus police officer entered the classroom and intervened, eventually arresting the student with the weapon.

22.    On September 12, 1986, Tony Thompson, a former student of Mr. Laird, was shot and killed on the campus of Fairfax High School.

23.    Tony was visiting campus to meet with one of his former special education teachers that helped him get into college.

24.    While Tony was on campus, he asked a current student, Shawn Christopher Boykin, about using a public payphone.

25.    This interaction devolved into a confrontation in which Boykin and another then current student, Andre West, chased Tony up the stairs and through the hallways of the school.

26.    Eventually, West fired several shots at Tony, one of which struck him

COMPLAINT
NO.

FREEDOM
FOUNDATION
P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

in the back and entered his heart, killing him.[3] Campus police responded to the situation immediately.

27. One of the officers attempted to save Tony's life by giving him CPR, while another pursued Boykin and West.

28. To protect his students, Mr. Laird locked his classroom door and sheltered in place with the students for over four hours.

29. Mr. Laird was one of only a handful of teachers from Eagle Rock High School that attended Tony's funeral to pay their respects.

30. It was an extremely significant and tragic moment in Mr. Laird's teaching career, and after the shooting death of Tony Thompson, Mr. Laird fiercely supported keeping a continued police presence on campus to be able to deal with threats to student safety on a moment's notice.

31. As recently as 2020, a student in Mr. Laird's classroom attempted to strangle another student to death. Fortunately, the police arrived, and the victim's life was saved.

32. Campus safety has now deteriorated to the point that Mr. Laird installed a peep hole in the door of his classroom, so that in the event of an emergency, he can see anyone outside his classroom trying to get inside.

**C. Glenn Laird opposes UTLA's anti-police advocacy.**

33. In early 2020, Mr. Laird saw several communications from UTLA

---

[3] Terry Pristin, *2 Gang Members Plead Guilty to Killing Youth at Fairfax High School*, L.A. TIMES (Oct. 8, 1987), https://www.latimes.com/archives/la-xpm-1987-10-08-me-12892-story.html (last visited Mar. 11, 2021).

FREEDOM
FOUNDATION
P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

through emails, social media, and other public statements, expressing support for the "Defund the Police" movement.

34.   Specifically, these UTLA communications advocated to remove police officers from campus. *E.g.*, Exhibit A.

35.   Several of these UTLA communications also contained rhetoric accusing police of being murderers and a force for evil in society.

36.   During this period, UTLA officials even appeared on "Zoom" video conference calls while wearing anti-police tee shirts.

37.   Given his past experiences with violence occurring on campus, these statements and actions caused Mr. Laird extreme anguish, since Mr. Laird is morally opposed to defunding the police and removing them from campus.

38.   Mr. Laird is grateful to have a police presence on campus to keep his students and himself safe when unfortunate, but unavoidable, violence occurs.

39.   Based on this opposition to UTLA's speech, Mr. Laird decided to terminate his UTLA membership and ends his dues payments.

**D. Mr. Laird's contractual relationship with UTLA Changes in 2018.**

40.   Pursuant to Cal. Ed. Code § 45060, the District will deduct union membership dues from an employee's paycheck, prior to the employee receiving the full amount of the lawfully earned wages.

41.   The amount deducted is the "amount which it has been requested in a revocable written authorization by the employee to deduct for the purpose of paying the dues of the employee for membership in any local professional organization or

COMPLAINT
NO.

FREEDOM
FOUNDATION
P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

1    in any statewide professional organization." Cal. Ed. Code § 45060.

2        42.    The employee may terminate their dues deductions "in writing and [the

3    revocation] shall be effective provided the revocation complies with the terms of the

4    written authorization." *Id.*

5        43.    Further, pursuant to the agreement collectively bargained between the

6    District and UTLA, "The District shall deduct UTLA dues from the salary of each

7    employee who has submitted a written authorization. Such an authorization shall

8    continue in effect unless revoked in writing by the employee…A deposit

9    approximating the amount of dues so deducted shall be remitted to UTLA on payday,

10   and the reconciled amount will be supplied to UTLA within 30 days after the

11   deductions are made, together with a list of affected employees."[4]

12       44.    Until early 2018, pursuant to prior dues authorization cards, the District

13   deducted dues monthly from Mr. Laird's paychecks.

14       45.    The language in these earlier dues authorization cards signed by Mr.

15   Laird remained consistent throughout the years Mr. Laird was a member of UTLA,

16   and did not contain explicit language restricting members' ability to resign to opt-

17   out windows.

18       46.    But in early 2018, UTLA made a "big deal" claiming the anticipated

19   *Janus* decision would be "a terrible thing that was going to destroy unions across the

20   country."

21       47.    During faculty meetings attended by union representatives, UTLA

22   _____

23   [4] *Supra* n.1 at 14.

24   COMPLAINT
     NO.                                    9

FREEDOM
FOUNDATION
P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

1  decided that it needed to put into place a strategy to thwart the effect of the Supreme

2  Court's likely decision.

3      48.    Part of this process was creating a modified membership and dues

4  authorization agreement that for the first time included a strict opt-out window in

5  which members would be allowed to exercise their First Amendment rights to

6  dissociate from UTLA only during a narrow annual period.

7      49.    On February 2, 2018, UTLA presented Mr. Laird with a dues

8  authorization card that now included a narrow annual opt-out period. Exhibit B.

9      50.    When Mr. Laird reviewed this new authorization, he disagreed with the

10 opt out window language.

11     51.    On February 11, 2018, Mr. Laird took a sharpie marker and struck out

12 the requirement the deduction authorization be irrevocable only at certain times.

13 Exhibit B.

14


15

16

17     52.    This authorization was accepted by UTLA, and became the operative

18 agreement governing Mr. Laird's UTLA membership.

19     53.    Pursuant to this agreement, UTLA instructed the District to continue to

20 deduct dues from Mr. Laird's paychecks and remit those monies to UTLA, as

21 authorized by Cal. Educ. Code § 45060.

22     54.    The District subsequently took $89.54 a month from Mr. Laird's

23 paychecks and sent it to UTLA to be expended on political speech.

24 COMPLAINT
   NO.

FREEDOM
FOUNDATION
P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

**E. UTLA and the District refused to allow Mr. Laird to resign his membership.**

55.     On June 12, 2020, Mr. Laird sent a letter to UTLA ending his membership pursuant to the terms of his authorization and instructing UTLA immediately to end his dues authorization with the District.

56.     Even though Mr. Laird resigned his membership, UTLA refused to release him from his membership and cease taking his lawfully earned wages.

57.     On June 23, 2020, UTLA responded with a letter refusing Mr. Laird's request, stating instead that he was legally bound by the deleted window period provision in his membership agreement. Exhibit C.

58.     In support of this contention, UTLA sent Mr. Laird a copy of the agreement he had previously signed.

59.     This copy of the agreement showed that Mr. Laird had specifically struck out the window period language. Exhibit B.



60.     UTLA did not instruct the District to stop seizing unauthorized dues from Mr. Laird's paychecks.

61.     UTLA continued to represent his membership and affirmative consent to the District.

62.     Pursuant to Cal. Ed. Code 45060, and the terms of the applicable CBA, the District continued to withdraw $89.54 a month from Mr. Laird's pay, and

COMPLAINT
NO.

FREEDOM FOUNDATION
P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

1    subsequently send it to UTLA without Mr. Laird's affirmative consent.

2    63.    On July 7, 2020, Mr. Laird sent a second letter to UTLA, again ending

3    his membership pursuant to the terms of his agreement and instructing UTLA

4    immediately to end his dues authorization with the District. Exhibit D.

5    64.    UTLA again refused his request. Exhibit E.

6    65.    In August 2020, Mr. Laird exchanged emails with Marcos F.

7    Hernandez, Chief Labor & Employment Counsel of the Los Angeles Unified School

8    District.

9    66.    Mr. Laird asked Hernandez whether the District would stop taking his

10   money and sending it to UTLA against his will. Exhibit F.

11   67.    Mr. Hernandez responded that "[t]he District complies with both the

12   *Janus* decision and Education Code section 45060 governing dues deductions for

13   California public school employers," and suggested Mr. Laird go talk to UTLA.

14   68.    From May 2020 to December 2020, UTLA and the District acted in

15   concert to confiscate $626.78 from Mr. Laird's monthly legally earned wages.

16   69.    The District diverted this money to UTLA for use in political advocacy,

17   and other policy promotion to which Mr. Laird is morally opposed.

18   **F. Glenn Laird finally allowed to resign his UTLA membership.**

19   70.    Faced with no choice, on December 14, 2020, Mr. Laird submitted a

20   third letter to UTLA attempted to end his membership and dues deduction. Exhibit

21   G.

22   71.    Because this letter was received during the opt-out period, which

23

24   COMPLAINT
     NO.                                   12

FREEDOM
FOUNDATION
P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

1  nonetheless was inapplicable to Mr. Laird's membership agreement, on December
2  22, 2020, UTLA allowed Mr. Laird to end his membership and deductions. Exhibit
3  H.

4      72.    This letter informed Mr. Laird that there would still be a dues deduction
5  taken from his check for the month of January, but that the money would be returned
6  to him at some unspecified date. *Id.*

7      73.    Mr. Laird was told that after January all dues deductions would cease.
8  *Id.*

9      74.    To this date, Mr. Laird has not received back the $89.54 withdrawn
10  from his paycheck by the District in January and sent to UTLA for use in political
11  speech to which Mr. Laird morally opposes.

12      75.    The controversy between the Defendants and Mr. Laird is a definite and
13  concrete dispute concerning the legal relations of parties with adverse legal interests.

14      76.    The dispute is real and substantial, as UTLA still retains $716.32 of Mr.
15  Laird's money for use in political advocacy to which Mr. Laird is morally opposed,
16  as authorized by California law and the applicable CBA, and as the Defendants
17  maintain is constitutional.

18      77.    Permanent injunctive relief is appropriate, as Mr. Laird is suffering a
19  continuing irreparable harm and injury inherent in a violation of First and Fourteenth
20  Amendment rights, for which there is no adequate remedy at law.

21      78.    The declaratory relief sought is not based on a hypothetical state of
22  facts, nor would it amount to a mere advisory opinion, as the parties dispute the

COMPLAINT
NO.

13

FREEDOM
FOUNDATION
P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

1    legality of ongoing retention of approximately $716.32 of Mr. Laird's money
2    without his affirmative consent.

3         79.     As a result of the foregoing, an actual and justiciable controversy exists
4    between Mr. Laird and the Defendants regarding their respective legal rights, and
5    the matter is ripe for judicial review.

6    **COUNT I**

7    **42. U.S.C. § 1983 for Violation of the Right to Freedom of Speech**

8         80.     Mr. Laird incorporates the allegations contained in paragraphs 1 – 79.

9         81.     Under the First Amendment, the government cannot take money from
10   public employees' wages to pay union dues or fees without the employees' voluntary
11   and informed affirmative waiver of their First Amendment right to be free of
12   compelled funding of objectionable speech, demonstrated by clear and compelling
13   evidence. *Janus v. AFSCME*, 138 S. Ct. 2448.

14        82.     Mr. Laird specifically struck out the portion of his previous
15   membership authorization which UTLA maintains prevented him from resigning his
16   membership and ending his dues deductions at will.

17        83.     Mr. Laird objects to, and has not affirmatively consented to, UTLA's
18   political speech.

19        84.     Cal. Educ. Code § 45060 and the CBA between the District and UTLA
20   violate the First Amendment, on their face and as applied to Mr. Laird.

21        85.     Defendants have compelled Mr. Laird to financially support UTLA's
22   political speech without his affirmative waiver of his First Amendment rights.

23

24   COMPLAINT
     NO.                        14

FREEDOM
FOUNDATION
P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

86.    Defendants have harmed Mr. Laird by diverting his lawfully earned wages to UTLA, which uses those funds to engage in political speech.

87.    Defendants acted under color of state law and pursuant to the applicable CBA and Cal. Educ. Code § 45060 to seize Mr. Laird's wages without his affirmative consent.

## COUNT II
### 42 U.S.C. § 1983 for the Deprivation of Liberty and Property Interests Without Due Process of Law

88.    Mr. Laird incorporates the allegations contained in paragraphs 1 – 87.

89.    The Fourteenth Amendment requires the provision of adequate procedures before an individual is deprived of life, liberty, or property.

90.    Mr. Laird has a cognizable liberty interest in his First Amendment rights.

91.    Mr. Laird has a cognizable property interest in the wages confiscated by the Defendants without his affirmative consent.

92.    Defendants' scheme for the seizure of dues for use in UTLA's objectionable political speech does not include any procedural protections sufficient to meet the requirements of the Due Process Clause.

93.    Neither California law nor the applicable CBA establish any procedures to convey notice to Mr. Laird before the District seized his wages without his affirmative consent and remitted those monies to UTLA for use in political speech.

94.    Neither California law nor the applicable CBA establish any procedures to provide Mr. Laird with any pre-deprivation or post-deprivation hearing or other

COMPLAINT
No.

15

FREEDOM
FOUNDATION
P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

1    opportunity to object to the seizure of his wages for use in UTLA's objectionable

2    political speech without his affirmative consent.

3        95.    Because it lacks the necessary procedural safeguards to protect Mr.

4    Laird's First Amendment and property interests, Defendants' dues deduction

5    scheme, on its face and as applied, violates Mr. Laird's right to procedural due

6    process.

7        96.    Pursuant to state law, Cal. Educ. Code § 45060, and the applicable

8    CBA, the District jointly acted with UTLA to deny Mr. Laird his procedural due

9    process rights.

10                                   **COUNT III**

11   **42 U.S.C. § 1983 for the Inherently Arbitrary Deprivation of Free Speech
     Liberty Interests**

12       97.    Mr. Laird incorporates the allegations contained in paragraphs 1 – 96.

13       98.    The substantive component of the Due Process Clause prohibits

14   restraints on liberty that are inherently arbitrary. Hence, substantive due process thus

15   bars certain government actions regardless of the fairness of the procedures used to

16   implement them.

17       99.    Infringements of substantive due process rights are subject to strict

18   constitutional scrutiny and must be narrowly tailored to serve a compelling state

19   interest.

20       100.   Mr. Laird has a cognizable liberty interest in his First Amendment

21   rights.

22       101.   The sole means available to Mr. Laird and public employees to

23

24   COMPLAINT
     NO.                              16

terminate their union memberships and end their dues deductions under Cal. Educ. Code § 45060 and the applicable CBA, requires their termination requests be directed to UTLA.

102.    UTLA is inherently biased and financially interested party with an incentive for dues deductions continue, whether an employee has given their affirmative consent or not.

103.    UTLA has no incentive to release Mr. Laird, or other comparable situated public employees, from their memberships.

104.    Rather, UTLA has a direct financial and legal incentive to represent to the District that Mr. Laird had provided the clear and affirmative consent required by *Janus*, even when Mr. Laird has affirmatively terminated his agreement and clearly withdrawn his consent.

105.    Under these provisions, the District is allowed neither to independently verify whether Mr. Laird affirmatively consented to the deduction of dues from his pay to be remitted to UTLA, nor request he submit a new verifiable authorization.

106.    As a result, Defendants' scheme has the purpose and effect of arbitrarily burdening Mr. Laird's ability to exercise his First Amendment rights.

107.    Mr. Laird has a substantive due process right to exercise his First Amendment rights without suffering the conflict of interest imposed by Defendants' scheme.

108.    Because it creates an inherent and arbitrary conflict of interest burdening Mr. Laird's ability to exercise his First Amendment rights, Defendants'

FREEDOM
FOUNDATION
P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

dues deduction scheme, on its face and as applied, violates Mr. Laird's right to substantive due process.

109.   The Defendants had no legitimate, let alone compelling, interest in depriving Mr. Laird of his First Amendment rights.

110.   Even if the Defendants' scheme did have a legitimate or compelling purpose, it is not narrowly tailored to support that interest.

111.   Pursuant to state law, Cal. Educ. Code § 45060, and the applicable CBA, the District jointly acted with UTLA to deny Mr. Laird his substantive due process rights.

## PRAYER FOR RELIEF

Wherefore, Mr. Laird respectfully requests that this Court:

**A.     Issue a declaratory judgement:**

•       That the Defendants' scheme to seize Mr. Laird's wages without his affirmative consent under Cal. Educ. Code § 45060 and the applicable CBA, and all other similarly situated employees, is a violation of the First Amendment;

•       That the Defendants' failure to provide Mr. Laird, and similarly situated employees, without prior notice and an opportunity to dispute the seizure of their wages without their affirmative consent, is a violation of the Fourteenth Amendment's guarantee of procedural due process;

•       That the Defendants' scheme requiring Mr. Laird, and other similarly situated employees, to direct their membership and dues authorization termination requests to a third-party union with a direct financial incentive to continue dues

COMPLAINT
NO.

FREEDOM
FOUNDATION
P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

deductions without the employees' affirmative consent, is inherently arbitrary and a violation of the Fourteenth Amendment's guarantee of substantive due process.

**B.    Issue a permanent injunction:**

• Enjoining the Defendants from seizing the wages of public employees without their voluntary and informed affirmative consent under Cal. Educ. Code § 45060 and the applicable CBA;

• Enjoining the Defendants from agreeing to and enforcing a procedure for deducting money from the pay of public employees that violates the First and Fourteenth Amendments; ordering the Defendants to implement a process providing adequate procedures for confirming public employees' voluntary and informed affirmative consent prior to the deduction of any money from their pay;

• Enjoining the Defendants from agreeing to and enforcing an inherently arbitrary procedure that violates the First and Fourteenth Amendments; ordering the Defendants to implement a process by which the District must directly confirm public employees' voluntary and informed affirmative consent prior to the deduction of any money from their pay.

**C.    Enter a judgment:**

• Awarding Mr. Laird compensatory damages in the amount of $716.32 for the monies unconstitutionally seized from his pay without his affirmative consent from June 2020 to January 2021;

• Award Mr. Laird compensatory damages for the violation of his First Amendment rights against compelled speech, in an amount to be determined at trial.

COMPLAINT
No.

19

FREEDOM FOUNDATION
P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874

1     •     Awarding Mr. Laird $1.00 in nominal damages for the deprivation of

2 his First Amendment and Fourteenth Amendment Due Process rights.

3 **D.**    **Other applicable relief:**

4     •     Award Mr. Laird his costs and attorneys' fees under 42 U.S.C. § 1983

5 and § 1988;

6     •     Award Mr. Laird any further relief to which he may be entitled and such

7 other relief as this Court may deem just and proper.

8

9 Date: March 16, 2021

10                                   Respectfully submitted,

11                                   FREEDOM FOUNDATION

12

13                                   Timothy Snowball, Cal Bar No. 317379

Elena Ives, Cal Bar No. 331159

14                                   Freedom Foundation

PO Box 552

15                                   Olympia, WA  98507

Telephone: (360) 956-3482

16                                   tsnowball@freedomfoundation.com

eives@freedomfoundation.com

17                                   *Attorneys for Plaintiff*

18

19

20

21

22

23

24 COMPLAINT

NO.

FREEDOM
FOUNDATION
P.O. Box 552, Olympia, WA 98507
P: 360.956.3482 | F: 360.352.1874