1  SCOTT A. KRONLAND (SBN 171693)
2  P. CASEY PITTS (SBN 262463)
   ALTSHULER BERZON LLP
3  177 Post Street, Suite 300
4  San Francisco, CA 94108
   Telephone: (415) 421-7151
5  Facsimile: (415) 362-8064
6  E-mail:  skronland@altber.com
              cpitts@altber.com
7
8  IRA L. GOTTLIEB (SBN 103236)
   igottlieb@bushgottlieb.com
9  LISA C. DEMIDOVICH (SBN 245836)
   ldemidovich@bushgottlieb.com
10 BUSH GOTTLIEB, A Law Corporation
11 801 North Brand Boulevard, Suite 950
   Glendale, California 91203-1260
12 Telephone: (818) 973-3200
13 Facsimile: (818) 973-3201

14 *Attorneys for Defendant United Teachers Los Angeles*

15            UNITED STATES DISTRICT COURT
16            CENTRAL DISTRICT OF CALIFORNIA
17
18 GLENN LAIRD,                          CASE NO.:  2:21-cv-02313-FLA-AS

19           Plaintiff,                  **MEMORANDUM OF POINTS
20      v.                               AND AUTHORITIES IN
                                         SUPPORT OF UTLA'S
21 UNITED TEACHERS LOS ANGELES,          MOTION TO DISMISS**
   *et al.*,
                                         FRCP 12(b)(1) & (b)(6)
22           Defendants.
23                                       Hearing Date:  July 30, 2021
24                                       Hearing Time:  1:30 PM
                                         Location:      Courtroom 6B
25                                       Judge:         Hon. Fernando L.
26                                                      Aenlle−Rocha
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................. i

INTRODUCTION ........................................................................................... 1

BACKGROUND .............................................................................................. 2

LEGAL STANDARD ....................................................................................... 5

ARGUMENT .................................................................................................... 5

    I.    Plaintiff lacks standing to seek prospective relief ............................. 5

    II.    Plaintiff's §1983 claims against UTLA fail on the merits.................... 7

        A.    Plaintiff fails to allege the state action necessary for a §1983 claim................................................................. 8

            1.    Private conduct that violates state law is not undertaken "under color of" state law ............................ 9

            2.    UTLA is not a state actor ................................................ 11

        B.    Plaintiff fails to allege a First Amendment violation .............. 14

        C.    Plaintiff fails to allege a due process violation........................ 16

CONCLUSION................................................................................................ 17

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Aholelei v. Dept. of Public Safety*,
   488 F.3d 1144 (9th Cir. 2007) ............................................................... 8

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .............................................................................. 5

*Augustine v. United States*,
   704 F.2d 1074 (9th Cir. 1983) ............................................................... 5

*Bain v. Cal. Teachers Ass'n*,
   156 F.Supp.3d 1142 (C.D. Cal. 2015) .............................................. 8, 9

*Bain v. Cal. Teachers Ass'n*,
   2016 WL 6804921 (C.D. Cal. May 2, 2016) ....................................... 14

*Belanger v. Madera Unified Sch. Dist.*,
   963 F.2d 248 (9th Cir. 1992) ................................................................. 8

*Belgau v. Inslee*,
   975 F.3d 940 (9th Cir. 2020) ......................................................*passim*

*Blum v. Yaretsky*,
   457 U.S. 991 (1982) ............................................................................ 13

*Bretz v. Kelman*,
   773 F.2d 1026 (9th Cir. 1985) (en banc) ............................................ 16

*Chicago Teachers Union, Local No. 1 v. Hudson*,
   475 U.S. 292 (1986) ............................................................................ 15

*City of Los Angeles v. Lyons*,
   461 U.S. 95 (1983) ........................................................................... 6, 7

*Collins v. Womancare*,
   878 F.2d 1145 (9th Cir. 1989) ................................................... 9, 10, 14

*Daniels v. Williams*,
   474 U.S. 327 (1986) ............................................................................ 16

*Davis v. FEC,*
    554 U.S. 724 (2008) ........................................................................... 5

*DeShaney v. Winnebago Cty. Dep't of Soc. Servs.,*
    489 U.S. 189 (1989) ......................................................................... 17

*Elena v. Municipality of San Juan,*
    677 F.3d 1 (1st Cir. 2012) ............................................................... 17

*Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7,*
    570 F.3d 811 (7th Cir. 2009) ........................................................... 12

*Hassett v. Lemay Bank & Trust Co.,*
    851 F.2d 1127 (8th Cir. 1988) ......................................................... 10

*N.C. ex rel. Haywood v. Barrington,*
    256 F.Supp.2d 452 (M.D.N.C. 2003) ............................................... 16

*Hendrickson v. AFSCME Council 18,*
    434 F.Supp.3d 1014 (D.N.M. 2020).................................................. 14

*Hudson v. Palmer,*
    468 U.S. 517 (1984) ......................................................................... 16

*Janus v. AFSCME Council 31,*
    138 S.Ct. 2448 (2018)................................................................. 14, 15

*Knox v. Westly,*
    2006 WL 2374763 (E.D. Cal. Aug. 16, 2006) ................................. 13

*Lingle v. Chevron USA Inc.,*
    544 U.S. 528 (2005) ......................................................................... 15

*Lugar v. Edmondson Oil Co.,*
    457 U.S. 922 (1982) ...................................................................9, 10, 11

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992) ........................................................................... 5

*Manhattan Cmty. Access Corp. v. Halleck,*
    139 S.Ct. 1921 (2019)................................................................... 8, 14

*Mendez v. Cal. Teachers Ass'n,*
    419 F.Supp.3d 1182 (N.D. Cal. 2020)............................................... 11

*Morales v. Beard*,
    2009 WL 2413425 (W.D. Pa. July 31, 2009) ................................................... 16

*O'Shea v. Littleton*,
    414 U.S. 488 (1974) ......................................................................................... 7

*Ohno v. Yasuma*,
    723 F.3d 984 (9th Cir. 2013) ........................................................... 8, 9, 11, 12

*Or. State Police Officers Ass'n v. Peterson*,
    979 F.2d 776 (9th Cir. 1992) ........................................................................... 7

*Ouzts v. Md. Nat'l Ins. Co.*,
    505 F.2d 547 (9th Cir. 1974) (en banc) ..................................................... 10, 11

*Parratt v. Taylor*,
    451 U.S. 527 (1981) ....................................................................................... 16

*Polk v. Yee*,
    481 F.Supp.3d 1060 (E.D. Cal. 2020) ...................................................... 12, 13

*Pub. Utilities Comm'n of D.C. v. Pollak*,
    343 U.S. 451 (1952) ....................................................................................... 14

*Quezambra v. United Domestic Workers AFSCME Local 3930*,
    445 F.Supp.3d 695 (C.D. Cal. 2020) ........................................................ 12, 14

*Rosebrock v. Mathis*,
    745 F.3d 963 (9th Cir. 2014) ........................................................................... 5

*Roudybush v. Zabel*,
    813 F.2d 173 (8th Cir. 1987) ......................................................................... 10

*Safe Air for Everyone v. Meyer*,
    373 F.3d 1035 (9th Cir. 2004) ......................................................................... 5

*Semerjyan v. SEIU Local 2015*,
    489 F.Supp.3d 1048 (C.D. Cal. 2020) ............................................. 1, 7, 11, 12

*Stoner v. Santa Clara Cty. Off. of Educ.*,
    502 F.3d 1116 (9th Cir. 2007) ......................................................................... 8

*Tsao v. Desert Palace, Inc.*,
    698 F.3d 1128 (9th Cir. 2012) ....................................................................... 12

iv

*Will v. Mich. Dep't of State Police,*
    491 U.S. 58 (1989) ................................................................................8

*Winterland Concessions Co. v. Trela,*
    735 F.2d 257 (7th Cir. 1984) ..............................................................10

*Yates v. Wash. Fed'n of State Emps.,*
    466 F.Supp.3d 1197 (W.D. Wash. 2020) ...................................1, 7, 11

*Zielinski v. SEIU Local 503,*
    499 F.Supp.3d 804 (D. Or. 2020) ................................................2, 11

*Zubieta v. L.A. Cty. Off. of Educ.,*
    2010 WL 11596562 (C.D. Cal. Mar. 30, 2010) ...................................8

**State Cases**

*Cumero v. PERB,*
    49 Cal.3d 575 (1989) .....................................................................13, 15

**Federal Statutes**

42 U.S.C. § 1983.............................................................................*passim*

**State Statutes**

Cal. Educ. Code § 45060 ........................................................10, 13, 15

Cal. Gov. Code
    § 3541.3 .............................................................................................14
    § 3541.5 .............................................................................................14
    § 3543 .....................................................................................2, 13, 15
    § 3543.5 ..................................................................................2, 13, 15
    § 3543.6 ..................................................................................2, 13, 15
    § 3544.9 ........................................................................................2, 15

**Rules**

Federal Rules of Civil Procedure
    Rule 12 ......................................................................................1, 5, 7
    Rule 23 ...................................................................................................7

1

**INTRODUCTION**

2          Plaintiff Glenn Laird alleges that his First Amendment and due process rights

3   were violated when he continued to have union payments deducted from his pay

4   after he resigned his membership in defendant United Teachers Los Angeles

5   ("UTLA" or "the Union").  As Plaintiff acknowledges, California law requires

6   defendant Los Angeles Unified School District ("LAUSD") to make such deductions

7   only from employees who have authorized them.  Plaintiff contends that his dues

8   deductions continued after his resignation because UTLA misrepresented to LAUSD

9   that Plaintiff's authorization had not been revoked.  Through this 42 U.S.C. §1983

10  action, Plaintiff seeks damages equal to all union payments deducted from his pay

11  following his resignation, as well as prospective declaratory and injunctive relief

12  regarding future deductions.

13          Plaintiff's claims should be dismissed pursuant to Rules 12(b)(1) and 12(b)(6).

14  His remedy, if any, is under state law, not §1983.

15          Initially, Plaintiff lacks standing to pursue claims for prospective relief.

16  Plaintiff asks this Court for a declaration that LAUSD's dues deduction procedures

17  violate the First Amendment and due process, and for an injunction requiring

18  changes to those procedures.  But Plaintiff's dues deductions ended well before he

19  filed this lawsuit, and there is no imminent threat they will recur.  Plaintiff has no

20  cognizable interest in procuring the prospective relief he seeks, and his claims for

21  such relief present no live case or controversy within this Court's Article III

22  jurisdiction.  *See, e.g.*, *Semerjyan v. SEIU Local 2015*, 489 F.Supp.3d 1048, 1059–60

23  (C.D. Cal. 2020); *Yates v. Wash. Fed'n of State Emps.*, 466 F.Supp.3d 1197, 1204–

24  06 (W.D. Wash. 2020).

25          Plaintiff's claims for retrospective relief against UTLA should be dismissed

26  under Rule 12(b)(6) because, even assuming the truth of Plaintiff's allegations, they

27  do not state viable §1983 claims.  As every court to consider the issue has held,

28  private party misrepresentations to public officials that are unlawful under state

1   law—like UTLA's purported misrepresentations here—do not amount to "state

2   action" sufficient to state a §1983 claim.  *See, e.g.*, *Zielinski v. SEIU Local 503*, 499

3   F.Supp.3d 804, 809–10 (D. Or. 2020).  That public employers like LAUSD play a

4   ministerial role in deducting union dues from union members in response to such

5   representations does not change the "state action" analysis.  *Belgau v. Inslee*, 975

6   F.3d 940, 946–49 (9th Cir. 2020).  In the absence of state action, state law, not

7   §1983, provides the remedy for UTLA's alleged misrepresentation.[1]

8           While the Court need not reach this issue, Plaintiff's allegations of private

9   wrongdoing by UTLA also fail to state viable First Amendment or due process

10  claims.  The First Amendment prohibits *public employers* from *compelling*

11  employees to subsidize union activities.  When a private party (such as the Union)

12  allegedly obtains money in violation of state law by making misrepresentations to a

13  public employer, there is no First Amendment violation; the issue is solely one of

14  state law.  Similarly, inadvertent deprivations caused by a private party's alleged

15  violations of state law do not violate the Due Process Clause where, as here, the State

16  provides adequate post-deprivation remedies.

17                                  **BACKGROUND**

18          Plaintiff Glenn Laird is a high school teacher employed by defendant LAUSD

19  in a bargaining unit represented in collective bargaining by defendant UTLA.

20  Complaint, Dkt. 1 ¶¶4–5.[2]  LAUSD employees are not required to join UTLA, and

21  UTLA has an obligation to represent those employees fairly whether or not they have

22  joined the Union.  Cal. Gov. Code §§3543, 3543.5(a), 3543.6(b), 3544.9.  Plaintiff

23  voluntarily chose to become a member of UTLA when he first became employed by

24  LAUSD in 1983.  Complaint ¶¶4, 8.

25  _____

26      [1] Plaintiff cannot sue the other defendants for retrospective relief because they are
    not "persons" under §1983 and have Eleventh Amendment immunity.  *See infra* note
27  6.

28      [2] For the purposes of its 12(b)(6) motion, UTLA accepts the allegations in
    Plaintiff's Complaint without admitting their truth.

On February 11, 2018, Plaintiff executed a new UTLA membership agreement. *Id.* ¶51. In the agreement, Plaintiff first stated that he "want[ed] to join with [his] fellow employees and become a member of UTLA" and "request[ed] and voluntarily accept[ed] membership in UTLA" and "agree[d] to abide by its Constitution and Bylaws." Dkt. 1-2 (membership agreement, Complaint Exhibit B). Plaintiff then separately "(1) agree[d] to pay regular monthly dues uniformly applicable to members of UTLA" and "(2) request[ed] and voluntarily authorize[d] [his] employer to deduct from [his] earnings and to pay over to UTLA such dues." Complaint ¶51; Dkt. 1-2.

In the membership agreement, Plaintiff acknowledged that his "agreement to pay dues shall remain in effect and shall be irrevocable unless [he] revoke[d] it by sending written notice via U.S. mail to UTLA." Complaint ¶51; Dkt. 1-2. The printed agreement provides that it can be revoked only during an annual window period. *See* Dkt. 1-2. Plaintiff alleges that, before signing the agreement, he used a Sharpie marker to strike out language defining the annual "opt out window" for submitting such a revocation. Complaint ¶¶50–51. Plaintiff did *not* strike out separate language providing that his agreement to pay dues via payroll deduction "shall be automatically renewed from year to year unless [he] revoke[s] it in writing during the window period, irrespective of [his] membership in UTLA." *Id.*; Dkt. 1-2.

On June 12, 2020, Plaintiff sent a letter to UTLA resigning from union membership and instructing UTLA to terminate his membership dues deductions. Complaint ¶55. His letter did not say anything about the alteration he had made in Sharpie marker to the printed UTLA membership agreement. Declaration of Harry Mar in Support of UTLA's Motion To Dismiss ("Mar Decl.") ¶8 & Ex. 1. Plaintiff alleges that UTLA refused to immediately honor his request to terminate dues deductions because the request had been submitted outside the window period set forth in his membership agreement. Complaint ¶57 & Ex. C (Dkt. 1-3). Plaintiff

3

1   alleges that UTLA "continued to represent his membership and affirmative consent
2   to [LAUSD]." *Id.* ¶¶60–61. Plaintiff contends that as a result of this
3   misrepresentation by UTLA to LAUSD, $626.78 in UTLA membership dues were
4   deducted from Plaintiff's pay from May 2020 to December 2020. *Id.* ¶68.

5         On December 14, 2020, Plaintiff sent another letter to UTLA to terminate his
6   dues deductions. Complaint ¶70. UTLA responded to Plaintiff on December 22,
7   2020, stating that the termination request had been processed. Complaint ¶71;
8   Complaint Ex. G, Dkt. 1-8 (UTLA response). UTLA informed Plaintiff that the final
9   deduction of dues from his pay would occur on January 5, 2021. Complaint ¶¶72–
10  73; Dkt. 1-8.[3]

11        As promised in UTLA's December 22, 2020 response, no deductions of union
12  dues or any other payments to UTLA from Plaintiff's pay have occurred since
13  January 5, 2021. Mar Decl. ¶14. Such deductions will not restart unless Plaintiff
14  voluntarily rejoins UTLA and executes a new written agreement authorizing those
15  deductions. *Id.*

16        On March 16, 2021, several months after his dues deductions had ended,
17  Plaintiff filed this lawsuit against UTLA, LAUSD, and the California Attorney
18  General. Complaint, Dkt. 1. Upon reviewing the Complaint, UTLA became aware
19  for the first time of Plaintiff's contention that his post-resignation deductions were
20  impermissible because he had crossed out certain language in the February 11, 2018
21  membership agreement. Mar Decl. ¶¶15–16. On April 1, 2021, counsel for UTLA
22  informed Plaintiff's counsel that UTLA "does not wish to engage in protracted
23  litigation about this issue," and that UTLA was providing Plaintiff with an
24  unconditional $800 refund, which was "sufficient to cover all the dues [Plaintiff]
25  paid after his June 2020 resignation ($716.32), plus any interest or nominal damages
26

27      [3] As UTLA's Chief Financial Director Harry Mar explains, the January 5, 2021
28  paycheck covered work performed by Plaintiff in December 2020 before Plaintiff
    revoked his dues deduction authorization. Mar Decl. ¶¶3, 13.

1  that might be sought."  Mar Decl. Ex. 7.

2  **LEGAL STANDARD**

3  A Rule 12(b)(6) motion should be granted if the complaint does not "contain

4  sufficient factual matter, accepted as true, to state a claim to relief that is plausible on

5  its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).  A claim is

6  plausible only "when the plaintiff pleads factual content that allows the court to draw

7  the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

8  A court should disregard conclusory factual allegations, and "draw on its judicial

9  experience and common sense" to determine whether a claim is plausible.  *Id.* at

10  678–79.

11  On a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction,

12  the Court may consider evidence beyond the complaint and "need not presume the

13  truthfulness of the plaintiff's allegations" concerning jurisdiction.  *Safe Air for*

14  *Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  The moving party should

15  prevail "if the material jurisdictional facts are not in dispute and the moving party is

16  entitled to prevail as a matter of law." *Augustine v. United States*, 704 F.2d 1074,

17  1077 (9th Cir. 1983).

18  **ARGUMENT**

19  **I.   Plaintiff lacks standing to seek prospective relief.**

20  A plaintiff in federal court must establish Article III jurisdiction for each form

21  of relief he seeks.  *Davis v. FEC*, 554 U.S. 724, 734 (2008).  A claim for relief does

22  not present a justiciable case or controversy within the federal courts' Article III

23  jurisdiction "when the issues presented are no longer live or the parties lack a legally

24  cognizable interest in the outcome." *Rosebrock v. Mathis*, 745 F.3d 963, 971 (9th

25  Cir. 2014) (citation omitted).  Jurisdiction must exist at the time a suit is brought.

26  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 569 n.4 (1992).

27  In this lawsuit, Plaintiff seeks (among other forms of relief) prospective

28  declaratory and injunctive relief regarding future deductions of union membership

5

1  dues from his pay.[4]  To establish standing to pursue such prospective relief, Plaintiff

2  must have been "likely to suffer future injury" from such union dues deductions at

3  the time he filed his lawsuit.  *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983).

4  But as Plaintiff's Complaint implicitly acknowledges, Complaint ¶¶70–74, and as the

5  evidence submitted herewith establishes beyond a doubt, Mar Decl. ¶14, all of

6  Plaintiff's dues deductions ended *before* he filed this lawsuit.

7        Because Plaintiff was no longer having any dues deducted from his pay when

8  he sued, the prospective relief sought in this case would not remedy any ongoing

9  injury.  Plaintiff also cannot demonstrate a realistic threat that he will be harmed by

10  future union dues deductions.  Plaintiff will not have *any* dues deducted from his pay

11  unless and until he voluntarily chooses to rejoin UTLA and executes a new, written

12  authorization for such deductions.  *Id.*  Plaintiff does not allege that he intends to re-

13  join UTLA.  Moreover, the specific circumstances giving rise to his claim here—

14  namely, the deduction of dues from Plaintiff's pay after his resignation from UTLA

15  on the basis of a membership agreement in which Plaintiff struck out some of the

16  language relating to such deductions—are extremely unlikely to recur in the future.

17  *See id.* ¶16 (explaining that a situation like Plaintiff's situation here has never

18  occurred previously and that such a unique situation would normally have been

19  

_____

20     [4] Specially, Plaintiff seeks a declaration "that the Defendants' scheme to seize
Mr. Laird's wages without his affirmative consent … is a violation of the First

21  Amendment"; that "the Defendants' failure to provide Mr. Laird, and similarly
situated employees, without [sic] prior notice and an opportunity to dispute the

22  seizure of their wages without their affirmative consent, is a violation of the
Fourteenth Amendment's guarantee of procedural due process," and that "the

23  Defendants' scheme requiring Mr. Laird, and other similarly situated employees, to
direct their membership and dues authorization termination requests to a third-party

24  union … is inherently arbitrary and a violation of the Fourteenth Amendment's

25  guarantee of substantive due process."  Complaint, Prayer for Relief ¶A.  Plaintiff
also seeks an order enjoining Defendants "from seizing the wages of public

26  employees without their voluntary and informed affirmative consent [or] agreeing to
and enforcing a procedure for deducting money from the pay of public employees

27  that violates the First and Fourteenth Amendments," and ordering Defendants to
implement a process to "directly confirm public employees' voluntary and informed

28  affirmative consent prior to the deduction of any money from their pay."  *Id.* ¶B.

1  brought to the attention of UTLA's Controller).  Such entirely speculative future

2  injuries are insufficient to establish Article III jurisdiction.  *See Lyons*, 461 U.S. at

3  108–09; *Or. State Police Officers Ass'n v. Peterson*, 979 F.2d 776, 777–78 (9th Cir.

4  1992).

5       Courts considering similar claims by individual, non-class plaintiffs seeking

6  prospective relief regarding already-terminated dues deductions have uniformly

7  recognized that such claims are not justiciable.  In *Semerjyan*, for example, this

8  Court considered another former union member's claim for prospective relief

9  regarding unauthorized dues deductions, and held that the plaintiff lacked standing to

10  pursue such relief because the possibility of future injury was "pure speculation."

11  489 F.Supp.3d at 1059–60; *see also, e.g.*, *Yates*, 466 F.Supp.3d at 1204–065.  The

12  same is true here: Any claim that Plaintiff will again be subject to unauthorized post-

13  resignation dues deductions would be "no more than speculation."  *Lyons*, 461 U.S.

14  at 108.[5]

15  **II.    Plaintiff's §1983 claims against UTLA fail on the merits.**

16       Plaintiff brings suit under 42 U.S.C. §1983 on the theory that his First

17  Amendment and due process rights were violated when UTLA membership dues

18  were deducted from his pay notwithstanding his resignation from UTLA

19  membership and revocation of his dues deduction authorization.  Plaintiff's claims

20  rest on his allegation that he validly revoked his dues deduction authorization in June

21  2020, but UTLA misrepresented to LAUSD that Plaintiff's written authorization

22  remained in effect and had not been revoked.  Even accepting Plaintiff's allegations

23  as true, as Rule 12(b)(6) requires, his §1983 claims against UTLA must be dismissed

24

25       [5] That Plaintiff purports to seek relief for "similarly situated employees," *see, e.g.*,
Complaint, Prayer for Relief ¶A, does not provide this Court with jurisdiction over

26  Plaintiff's claims for prospective relief.  Plaintiff has not brought any of his claims
on behalf of a class, let alone sought class certification, and even in a proper Rule 23

27  class action, the named plaintiff must have standing at the outset of the litigation to
pursue each form of relief sought.  *Lyons*, 461 U.S. at 101–03 (discussing *O'Shea v.*

28  *Littleton*, 414 U.S. 488 (1974)).

7

1   for failure to state a claim, both because Plaintiff has not alleged the "state action"

2   needed to pursue a §1983 claim, and because he does not assert viable First

3   Amendment or due process claims.[6]

4       **A.**    **Plaintiff fails to allege the state action necessary for a §1983 claim.**

5         Section 1983 applies only to conduct undertaken "under color of any statute,

6   ordinance, regulation, custom, or usage, of any State or Territory or the District of

7   Columbia." 42 U.S.C. §1983. Likewise, "[m]ost rights secured by the Constitution

8   are protected only against infringement by governments." *Ohno v. Yasuma*, 723

9   F.3d 984, 993 (9th Cir. 2013) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922,

10  936–37 (1982)) (alteration in original); *see also Manhattan Cmty. Access Corp. v.

11  Halleck*, 139 S.Ct. 1921, 1928 (2019) (First Amendment addresses government

12  restraints on freedom of speech and association, not purely private conduct). For that

13  reason, private parties like UTLA are generally not subject to §1983 liability, and a

14  plaintiff pursuing a constitutional §1983 claim based on a private party's conduct

15  must show that "the conduct allegedly causing the deprivation of a federal right [is]

16  fairly attributable to the State," i.e., that the private party's conduct constitutes "state

17  action." *Ohno*, 723 F.3d at 993 (quoting *Lugar*, 457 U.S. at 936–37); *see also Bain

18  v. Cal. Teachers Ass'n*, 156 F.Supp.3d 1142, 1149–50 (C.D. Cal. 2015) (same). If

19  the conduct "is not so attributable, then there is no 'state action[,]' no violation" of a

20  federal right, and no §1983 claim. *Ohno*, 723 F.3d at 993.

21

22          [6] The other Defendants in this lawsuit (the Attorney General of California and

23  LAUSD) are not subject to claims for retrospective relief under §1983. The
    Attorney General, when sued in his official capacity, is not a "person" within the

24  meaning of Section 1983 with respect to claims for retrospective relief. *Will v. Mich.
    Dep't of State Police*, 491 U.S. 58, 71 (1989). Nor is LAUSD. *See Stoner v. Santa

25  Clara Cty. Off. of Educ.*, 502 F.3d 1116, 1122 (9th Cir. 2007); *Zubieta v. L.A. Cty.
    Off. of Educ.*, 2010 WL 11596562, at \*10 (C.D. Cal. Mar. 30, 2010). Further, both

26  LAUSD and the Attorney General, when sued in his official capacity, have Eleventh
    Amendment immunity from claims for monetary relief. *See Aholelei v. Dept. of

27  Public Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007); *Belanger v. Madera Unified Sch.

28  Dist.*, 963 F.2d 248, 254 (9th Cir. 1992).

8

Courts apply the two-prong test established in *Lugar,* 457 U.S. at 939, to determine whether a plaintiff states a §1983 claim against a private actor.  This test asks, first, "'whether the claimed deprivation has resulted from the exercise of a right or privilege having its source in state authority.'"  *Bain*, 156 F.Supp.3d at 1149 n.6 (quoting *Lugar*, 457 U.S. at 939).  This is known as the "state policy" requirement.  *See Collins v. Womancare*, 878 F.2d 1145, 1151 (9th Cir. 1989) (citing *Roudybush v. Zabel*, 813 F.2d 173, 176 (8th Cir. 1987)).  Second, the test asks whether "'under the facts of this case … [the] private parties … may be appropriately characterized as "state actors."'"  *Bain*, 156 F.Supp.3d at 1149 n.6 (quoting *Lugar*, 457 U.S. at 939).  This is the "state actor" requirement.  *See Collins*, 878 F.2d at 1151.

"Both elements under *Lugar* must be met for there to be state action."  *Id.* (citing *Lugar*, 457 U.S. at 937–39).  In this case, neither is satisfied.

### 1.    Private conduct that violates state law is not undertaken "under color of" state law.

To establish the first prong of the *Lugar* test, Plaintiff must show that the alleged violation of his First Amendment and due process rights "resulted from 'the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible.'"  *Ohno*, 723 F.3d at 994 (quoting *Lugar*, 457 U.S. at 937).  That is, Plaintiff must show that the claimed constitutional deprivation is attributable to state policy.  Plaintiff can make no such showing here, because his claims arise from alleged conduct that is *contrary* to state policy—namely, UTLA's alleged misrepresentations to LAUSD regarding Plaintiff's revocation of his dues deduction authorization.

The crux of Plaintiff's complaint is his allegation that, prior to December 2020, UTLA falsely represented to LAUSD that Plaintiff had provided written authorization for his post-resignation dues deductions and had not validly revoked that authorization.  *See, e.g.*, Complaint ¶61 (alleging that, after Plaintiff's resignation, "UTLA continued to represent his … affirmative consent to the

9

District"). California law, however, allowed UTLA to request that LAUSD make deductions from an employee's pay only if the employee had affirmatively authorized the deductions via a signed authorization that had not been revoked in a manner that "complies with the terms of the written authorization." Cal. Educ. Code §45060(a). Accordingly, by alleging that UTLA continued to request that dues be deducted from his pay even after he had validly revoked his dues deduction authorization, Complaint ¶82, Plaintiff necessarily alleges that the Union "'act[ed] contrary to the relevant policy articulated by the State.'" *Collins*, 878 F.2d at 1153 (quoting *Lugar*, 457 U.S. at 940).

It is axiomatic that "'private misuse of a state statute does not describe conduct that can be attributed to the State.'" *Collins*, 878 F.2d at 1152 (quoting *Lugar*, 457 U.S. at 941); *see also, e.g.*, *Ouzts v. Md. Nat'l Ins. Co.*, 505 F.2d 547, 553–54 (9th Cir. 1974) (en banc) (holding private party was not acting under color of state law where an "applicable statute expressly prohibits and makes criminal" the private party's conduct); *Hassett v. Lemay Bank & Trust Co.*, 851 F.2d 1127, 1129–30 (8th Cir. 1988) (holding misuse of state statute by private actor not actionable under §1983); *Roudybush*, 813 F.2d at 177 (same); *Winterland Concessions Co. v. Trela*, 735 F.2d 257, 262 (7th Cir. 1984) (same). In *Collins*, for example, the plaintiff protestors argued that their constitutional rights were violated when employees of a private clinic placed the plaintiffs under citizens' arrest without following the state law that authorizes such arrests, but the Ninth Circuit held that the plaintiffs' suit failed at the first step of *Lugar* because the clinic employees' actions "could not be ascribed to any governmental decision; rather [the clinic employees] were acting *contrary to* the relevant policy articulated by the State." 878 F.2d at 1153 (quoting *Lugar*, 457 U.S. at 940) (emphasis added). Similarly, in *Lugar*, allegations that the defendant had *misused* the state's replevin procedure in a manner "contrary to the relevant policy articulated by the State" "could not be ascribed to any governmental decision" and thus did not satisfy the "state action" requirement of

10

1   §1983.  457 U.S. at 940–41.  And in *Ouzts*, the plaintiff failed to establish the state

2   action necessary for a §1983 cause of action where he claimed that private bail

3   bondsmen had "allegedly represented" that they were acting under the authority of

4   Los Angeles County.  505 F.2d at 554.

5   In a straightforward application of these principles, courts have uniformly

6   recognized that plaintiffs did not state §1983 claims when they alleged that a union,

7   in violation of state law, falsely misrepresented to a public employer that the

8   plaintiffs had authorized dues deductions.  *Zelinski*, 499 F.Supp.3d at 810; *see also*

9   *Yates*, 466 F.Supp.3d at 1203–04 (same); *Mendez v. Cal. Teachers Ass'n*, 419

10   F.Supp.3d 1182, 1187 (N.D. Cal. 2020) (finding failure to state §1983 claim where

11   plaintiff alleged that union, in violation of state law, had misrepresented implications

12   of signing union membership card and authorizing dues deductions to bargaining

13   unit employees); *cf. Belgau v. Inslee*, 975 F.3d at 946–47 (holding prong one of

14   *Lugar* not met where "'source of the alleged constitutional harm' is not a state statute

15   or policy but the particular private agreement between the union and [e]mployees")

16   (quoting *Ohno*, 723 F.3d at 994).  The same analysis applies in full to the alleged

17   UTLA misrepresentations that form the basis for Plaintiff's §1983 claims in this

18   lawsuit.  Because those alleged misrepresentations are contrary to California's policy

19   of permitting unions to request deductions only from individuals whose written

20   authorizations have *not* been validly revoked, Plaintiff's §1983 claims against UTLA

21   fail under the first, "state policy" prong of the *Lugar* test.

22   ### 2.   UTLA is not a state actor.

23   Plaintiff's §1983 claims also fail to satisfy the second prong of the *Lugar* test,

24   which requires a showing that "the party charged with the deprivation could be

25   described in all fairness as a state actor."  *Ohno*, 723 F.3d at 994.  As this Court

26   recently concluded in *Semerjyan*—which also involved claims arising from alleged

27   union misrepresentations—the Union's status as a private party provides an

28   independently sufficient basis for dismissing Plaintiff's §1983 claims.

1   489 F.Supp.3d at 1056–59; *see also Polk v. Yee*, 481 F.Supp.3d 1060, 1066–68 (E.D.

2   Cal. 2020); *Quezambra v. United Domestic Workers AFSCME Local 3930*, 445

3   F.Supp.3d 695, 702–05 (C.D. Cal. 2020).

4       Courts in the Ninth Circuit consider four tests to determine whether a private

5   party may nonetheless be deemed a "state actor" subject to suit under §1983: "(1) the

6   public function test; (2) the joint action test; (3) the state compulsion test; and (4) the

7   governmental nexus test."  *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1140 (9th

8   Cir. 2012) (citation omitted).  The "most relevant" of these are the "public function"

9   and "joint action tests," as these tests "largely subsume" the other two.  *Ohno*, 723

10  F.3d at 995 & n.13.  The "public function" test "treats private actors as state actors

11  when they perform a task or exercise powers traditionally reserved to the

12  government," while the "joint action" test "focuses on 'whether state officials and

13  private parties have acted in concert in effecting a particular deprivation of

14  constitutional rights.'"  *Id.* at 996 (quoting *Tsao*, 698 F.3d at 1140).

15      In this case, the source of Plaintiff's alleged harm was private conduct by

16  UTLA, which allegedly misrepresented to LAUSD that Plaintiff's authorization for

17  union dues deductions remained effective and had not been validly revoked.  But

18  "[u]nions are not state actors; they are private actors," *Hallinan v. Fraternal Order of*

19  *Police of Chicago Lodge No. 7*, 570 F.3d 811, 815 (7th Cir. 2009), and "maintaining

20  [Union] membership lists and providing them to the State … is not a public

21  function." *Semerjyan*, 489 F.Supp.3d at 1057–59; *cf. Belgau*, 975 F.3d at 947 n.2

22  (holding union operating under analogous statutory scheme did not qualify as state

23  actor under "the public function, the state compulsion, [or] the governmental nexus

24  tests").  Indeed, California law expressly forbids LAUSD from interfering in

25  employee decisions about whether to become union members and pay membership

26

27

28

dues.[7]  And the statutory dues deduction procedure prevents LAUSD from shaping the terms of private dues payment agreements between employees and their unions.[8]

As the Ninth Circuit recently held in *Belgau*, the mere fact that a public employer like LAUSD deducts and transmits dues payments to a union on the basis of the union's representations does not establish "joint action" (or any other cognizable state action theory) for the purposes of §1983.  *See* 975 F.3d at 947–49. Even where a private party's alleged actions are *consistent* with the law (rather than *contrary* to the law, as alleged here), "[t]hat the State responds to such actions by adjusting" its own conduct (e.g., by deducting dues) "does not render it responsible for those actions."  *Blum v. Yaretsky*, 457 U.S. 991, 1005 (1982) (emphasis in original); *see also, e.g.*, *Polk*, 481 F.Supp.3d at 1066–67 (explaining state's merely administrative fee deduction on behalf of union did not render union state actor); *Knox v. Westly*, 2006 WL 2374763, at *3–5 (E.D. Cal. Aug. 16, 2006) (holding union members could not challenge public sector union dues increase under §1983 because union was not state actor).

This is doubly true for unlawful actions, where the alleged harm to the plaintiff cannot even conceivably be traced to a government policy.  As *Blum* makes clear, the government has no duty to investigate the underlying bona fides of each private decision to which it responds.  *See* 457 U.S. at 1005–06 (holding that state's adjustment of Medicaid benefits levels in response to private medical decisions about appropriate level of care does not give rise to state action).  LAUSD's "ministerial obligation to deduct dues … does not transform" UTLA's purported

---

[7] *See* Cal. Gov. Code §§3543, 3543.5, 3543.6; *see also Cumero v. PERB*, 49 Cal.3d 575, 587 (1989) (recognizing school district employees' right "to refuse to join or participate in the activities of employee organizations").

[8] *See, e.g.*, Cal. Educ. Code §45060(e), (f) (providing that requests to cancel or change authorizations "shall be directed to the employee organization rather than to the governing board" and that the organization need not submit copies of authorizations to the governing board "unless a dispute arises about the existence or terms of the written authorization").

misrepresentations "into state actions."  *Bain v. Cal. Teachers Ass'n*, 2016 WL 6804921, at *7 (C.D. Cal. May 2, 2016), *appeal dismissed as moot*, 891 F.3d 1206 (9th Cir. 2018); *see also Belgau*, 975 F.3d at 948; *Quezambra*, 445 F.Supp.3d at 703–04; *Hendrickson v. AFSCME Council 18*, 434 F.Supp.3d 1014, 1026 (D.N.M. 2020).

*    *    *

That Plaintiff's allegations fail to make out a claim for relief under §1983 does not leave Plaintiff without a remedy.  It simply means that state law, rather than federal constitutional law, provides the appropriate remedy.  Public school employees like Plaintiff who contend a union or employer has violated their right to refrain from supporting a labor organization can file unfair labor practice charges with the Public Employment Relations Board.  *See* Cal. Gov. Code §§3541.3(i), 3541.5; *see also Collins*, 878 F.2d at 1152–53 (holding wrongful acts of private party not actionable under §1983 but redressable under state law) (citing *Civil Rights Cases*, 109 U.S. 3, 17 (1883)).  That state administrative process, not federal court, is the appropriate forum for Plaintiff's grievance.

### B.    Plaintiff fails to allege a First Amendment violation.

While Plaintiff's failure to allege the requisite state action to support his §1983 claims is dispositive, Count I also fails for the independent reason that he has not alleged any First Amendment violation.  The First Amendment is concerned only with government, not private, action.  *See, e.g., Pub. Utilities Comm'n of D.C. v. Pollak*, 343 U.S. 451, 461 (1952) (First Amendment "appl[ies] to and restrict[s] only the … Government and not private persons"); *Manhattan Cmty. Access Corp.*, 139 S.Ct. at 1926, 1928 (same).  *Janus v. AFSCME Council 31*, 138 S.Ct. 2448 (2018), for example, involved public employees' First Amendment right not to be *compelled by their government employer* to financially support a union.  *Id.* at 2459–60.[9]

---

[9] Because government-compelled payments to a union by non-members were considered an impingement on First Amendment rights even before *Janus*, the First

14

1    Here, California law does not compel any such financial support; to the

2  contrary, it makes union membership and dues payment voluntary, and expressly

3  forbids public employers from coercing employees to join or support unions.  *See*

4  Cal. Educ. Code §45060(a) (requiring employee's "revocable written authorization"

5  of union membership dues deductions); Cal. Gov. Code §§3543, 3543.5, 3543.6,

6  3544.9; *Cumero*, 49 Cal.3d at 587.  Unlike the plaintiff in *Janus*, Plaintiff does not

7  allege that he was compelled by state law to pay any money to UTLA as a condition

8  of public employment.  Instead, Plaintiff claims that UTLA inappropriately obtained

9  money from him through misrepresentations to LAUSD that violated the California

10  law governing such deduction requests.  Such claims of private party misconduct do

11  not implicate the First Amendment's prohibitions on *government-compelled* speech

12  or association.[10]

---

15  Amendment required procedures to minimize that impingement.  *See Chicago

16  Teachers Union, Local No. 1 v. Hudson*, 475 U.S. 292 (1986).  But payments to a
   union that are voluntarily and affirmatively authorized (the only kind California law

17  permits) do not impinge First Amendment rights at all.  *See Belgau*, 975 F.3d at 950–
   52 (Union dues deductions pursuant to voluntary union membership agreements do

18  not violate First Amendment).

19  [10] Plaintiff's substantive due process claim is premised on his contention that

20  California's dues deduction system imposes an "arbitrar[y] burden[]" on his First
   Amendment rights.  Complaint ¶106.  Because California's policy of permitting only

21  deductions that have been voluntarily authorized does not implicate the First
   Amendment, however, Plaintiff's derivative substantive due process claim also fails.

22    Even if that system *did* impose some minimal burden on Plaintiff's First

23  Amendment rights, California's decision to assign unions the ministerial obligation
   to provide public employers with accurate lists of those individuals who have joined

24  the union and authorized dues deductions is entirely reasonable and not at all
   "arbitrary," given that unions are best situated to gather and maintain that

25  information, have a legal obligation to provide accurate information, and must

26  indemnify public employers for any errors.  *See* Cal. Educ. Code §45060(e), (f).
   California's policy can hardly be deemed "arbitrary and irrational" or lacking in "any

27  reasonable justification in the service of a legitimate governmental objective[s]," as
   would be required to establish Plaintiff's substantive due process claim.  *See Lingle

28  v. Chevron USA Inc.*, 544 U.S. 528, 543–44 (2005).

1    **C.    Plaintiff fails to allege a due process violation.**

2    While Plaintiff's failure to allege the requisite state action to support his §1983

3    claims is dispositive, Count II also does not state any procedural due process

4    violation.  It is well established that the government does not violate a plaintiff's

5    procedural due process rights when "random and unauthorized" conduct causes a

6    deprivation of the plaintiff's property, so long as the government provides adequate

7    post-deprivation remedies.  *Parratt v. Taylor*, 451 U.S. 527, 541, 543–44 (1981),

8    *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986) (finding no procedural

9    due process violation for negligent loss of prisoner's property); *see Daniels*, 474 U.S.

10   at 328 ("[T]he Due Process Clause is simply not implicated by a *negligent* act of an

11   official causing unintended loss of or injury to life, liberty, or property.") (emphasis

12   in original); *Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (finding no procedural due

13   process violation for unauthorized harm to plaintiff by public employee, even if

14   intentional, where state law provided adequate post-deprivation remedies); *see also*

15   *Bretz v. Kelman*, 773 F.2d 1026, 1030 (9th Cir. 1985) (en banc) ("[W]here the

16   deprivation is both of a relatively insignificant interest and is utterly unpredictable, a

17   postdeprivation remedy is the state's one opportunity to provide due process.").

18   Thus, even if a government payroll clerk (who would indisputably be a state

19   actor) had illegally forged Plaintiff's name on a union dues deduction authorization,

20   Plaintiff would have no procedural due process claim.  *See, e.g.*, *N.C. ex rel.*

21   *Haywood v. Barrington*, 256 F.Supp.2d 452, 463–64 (M.D.N.C. 2003) (holding that

22   government employee's alleged forgery of plaintiff's signature on form consenting

23   to forfeiture of property did not give rise to procedural due process claim under

24   §1983 where adequate post-deprivation remedies were available); *Morales v. Beard*,

25   2009 WL 2413425, at *4–5 (W.D. Pa. July 31, 2009) (holding prison official's

26   alleged forgery of prisoner's signature on withdrawal slip from his inmate account

27   did not give rise to procedural due process claim where adequate post-deprivation

28   remedies were available).

1    Just as the Due Process Clause does not require the government to anticipate
2  and prevent the random and unauthorized acts of its own employees, the government
3  also need not anticipate and eliminate all risk of random, unauthorized acts by
4  *private* actors that might result in short-term loss of property, as long as adequate
5  post-deprivation remedies are available.  Thus, a homeowner whose neighbor
6  obtained a city tree removal permit based on alleged misrepresentations that the tree
7  was located on the neighbor's side of the property line failed to state a procedural
8  due process claim against city officials who removed the tree.  *Elena v. Municipality*
9  *of San Juan*, 677 F.3d 1, 10 (1st Cir. 2012); *see also DeShaney v. Winnebago Cty.*
10  *Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989) ("[N]othing in the language of the
11  Due Process Clause itself requires the State to protect the life, liberty, and property
12  of its citizens against invasion by private actors.").

13    Plaintiff's allegations here show that LAUSD deducted union dues from his
14  paycheck only because LAUSD was informed by UTLA that Plaintiff had authorized
15  the deductions.  If Plaintiff *had* validly revoked that authorization, any deprivation of
16  property that resulted from UTLA's misrepresentation would not implicate
17  procedural due process so long as the State provides adequate post-deprivation
18  remedies.  Here, the State does so, providing recourse via proceedings before the
19  state labor board, *see supra* at 14, as well as via potential state tort claims.  Due
20  process requires no more.

21                          **CONCLUSION**

22    For the foregoing reasons, Plaintiff's claims should be dismissed.

23

24

25

26

27

28

1    DATED:   June 9, 2021                Respectfully submitted,

2                                     By:   /s/ P. Casey Pitts

3                                            P. Casey Pitts

4                                     SCOTT A. KRONLAND
5                                     P. CASEY PITTS
                                      ALTSHULER BERZON LLP
6
7                                     IRA L. GOTTLIEB
8                                     LISA C. DEMIDOVICH
                                      BUSH GOTTLIEB, A Law Corporation
9
10                                    *Attorneys for Defendant UTLA*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28